BALDWIN and others, Respondents, vs. CORNELIUS, Appellant.

*September 6 — September 26, 1899.*

*Instructions to jury: Evidence: Issues.*

1. The only issue being as to which of two rules for scaling logs was to have been used under an oral contract of sale, and there being no, impeachment of the fairness of the scale made, it was error to submit to the jury the question of the accuracy or correctness of that scale.
2. If, in such a case, it had been agreed that the logs should be scaled according to the rule contained in a certain book possessed by one of the parties, and they were so scaled, it was immaterial whether said party had read the rule and knew its terms, or what his belief was as to the rule contained in the book,— no question of mistake or deceit being involved.

APPEAL from a judgment of the circuit court for Sheboygan county: N. S. GILSON, Circuit Judge. *Reversed.*

The complaint alleges, in substance, that the plaintiffs sold defendant all the oak and basswood timber on certain lands owned by plaintiffs at the agreed price of $8 per 1,000 feet for red oak and $6 per 1,000 feet for white oak and basswood, to be scaled in the woods and before the logs were hauled; that defendant entered upon the premises and cut 69,408 feet of white oak, 51,554 feet of red oak, and 11,860 feet of basswood; that defendant had paid on account thereof $740.65, and yet owed plaintiffs $159.05, for which judgment was demanded. Defendant's answer admitted the purchase and terms, and denied the measurements claimed. He alleged the cutting of only 57,863 feet of white oak, 41,683 feet of red oak, and 9,973 feet of basswood, and the payment in full therefor, being the sum of $740.65, and that plaintiffs accepted and received said sum in full satisfaction thereof.

The trial resulted in a verdict for the plaintiffs for $101.10

damages, and from a judgment entered thereon the defendant appeals.

*M. C. Mead*, for the appellant.

*A. C. Shaw*, for the respondents.

BARDEEN, J. Upon the trial the plaintiffs claimed that it was agreed that the logs in question were to be scaled by the Scribner log rule, whereas they were in fact scaled by the Doyle rule, without their knowledge or consent; that, after the logs had been hauled to the mill, they caused a scale to be made by the Scribner rule, which resulted in a material increase in the amount of logs over the scale made by the defendant. The figures given in the statement of facts show the two scales. The defendant insisted that the Scribner rule was not agreed upon; that at the time of the agreement the plaintiff *Lottie Baldwin*, who conducted the negotiations, had a book called "Scribner's Lumber and Log Book," and said, if the scale was made according to that book, it would be all right; that the book mentioned contained no other than "Doyle's rule" for the measurement of logs, and that he used the Doyle rule in scaling the logs, with plaintiffs' knowledge. Thus the issue was sharply presented as to which rule was to have been used. The evidence shows that logs scaled by the Scribner rule will somewhat overrun a scale of the same logs by the Doyle rule. There can be no doubt of the proposition that if it was agreed that the Scribner rule should be used, and a different rule was used, which resulted in showing a smaller quantity of logs, in absence of any element of accord and satisfaction the defendant would be liable for the difference. The plaintiffs were entitled to pay for the logs according to the rule agreed upon.

The complaint contains no allegation attacking the scale made by the defendant; neither is there any evidence in the record which impeaches such scale. It is true that *Miss*

*Baldwin* testified in one place, "I know he measured out some part of the logs for sap on some." Another witness also stated: "Well, he took out on most of them just the sap; measured inside of the sap; about half an inch in from the bark, on each side of the log. This he did on sound logs." Upon cross-examination this witness stated that he was present only twice, for a little while at a time, and had never scaled logs before. Such testimony as this would hardly be sufficient to raise a suspicion against the scale. It afforded no basis for a jury to act upon. There had been no scale by the Doyle rule save that made by the defendant; no allegation that his scale had not been proper and fair; no evidence from any person who had had experience in scaling that the logs had not been fairly scaled.

As before stated, the real issue was whether the Scribner rule or Doyle rule, as shown by the book mentioned, was to have been used. This issue the court submitted to the jury, and among other instructions gave the following: "If it was agreed that the logs were to be scaled according to the rule contained in the book possessed by *Miss Baldwin* (Exhibit 1), and she had read the rule and knew what the terms of the rule were, then the scale therein contained is the one to be used in ascertaining the number of feet of the logs." This instruction is palpably bad. If the agreement was that the logs were to be scaled according to the rule contained in the book, then it made no difference whether *Miss Baldwin* had read the rule, or knew the terms of the rule, or not. To put any such limitation upon the instruction was without warrant in the testimony, and prejudicial to the defendant. After telling the jury to determine which rule was to have been used, the court further said: "If the measurement of the logs was to be made according to the rule in this book, then was the scale made by the defendant a correct and accurate one?" In another place he tells the jury that the burden of proof is upon the plaintiffs to show

that the Scribner, and not the Doyle, rule was to have been used, "and unless they have shown that by a preponderance of the evidence they are not entitled to recover unless the evidence shall further satisfy you that the defendant, in making a scale of these logs, did not do so accurately and correctly." In several other places in the charge the court lays stress upon the question of whether defendant had made a fair scale or not. As we have already seen, the evidence is barren of any fact that would sustain a finding impeaching the defendant's scale. The evidence shows without contradiction that during the progress of the work defendant furnished scale sheets, showing the amount of his scale, and sent checks in payment of the amounts shown thereby, which were accepted and retained by the plaintiffs without objection. It further shows that during the progress of the work the plaintiff *Lottie*, who had the matter in charge, was present in the woods a greater portion of the time while the scale was being made, and attempted to make a scale of the logs with a rule, in connection with her book, and kept an account of the logs in a book, which was produced at the trial. The defendant marked the amount of each log on the end, which amount the plaintiff also entered in her book. She had before her at all times her own record as well as the scale sheets which were furnished her. She knew that under the contract the logs were to be scaled in the woods before they were hauled; that, if she was dissatisfied with the scale, she had a right to take a scaler in the woods; and that defendant had informed her she might get the state scaler to scale the logs. She had accepted and retained the scale sheets and checks in payment of the logs without objection, and, if the Doyle rule was to govern, she was in no position where she could impeach the scale. Under the evidence we are clearly of the opinion that the plaintiffs had no standing in court except upon the question of whether the Scribner or Doyle rule was to control, and

for the court to submit to the jury the accuracy or correctness of the defendant's scale was error.

The court permitted the witness *Lottie Baldwin* to answer a question as to whether she *believed* that the book she had contained the Scribner rule. This was of questionable propriety. Her belief as to the matter under consideration was wholly immaterial. The real question was, What was the contract? not what she may have believed or thought. The plaintiff was not seeking a recovery upon the grounds of deceit or mistake. The case presented a plain issue of fact, concerning which the motives or beliefs of the parties were of no consequence.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.